IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-87-FL

| | | |
|---|---|---|
| EUNICE STEWARD, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-42, DE-44] pursuant to Fed. R. Civ. P. 12(c). Claimant Eunice Steward ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion [DE-46] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 19 June 2009, alleging disability beginning 15 December 2008. (R. 15). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 17 August 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and

testified. (R. 30-67). On 21 September 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-23). On 10 January 2011, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion; (2) improper assessment of Claimant's credibility; and (3) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: fibromyalgia, leukopenia, anemia, connective tissue disease, degenerative disc disease, headaches and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] involving simple, routine and repetitive tasks and occasional contact with co-workers and the public that has the following physical limitations: occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently balance, stoop, kneel, crouch or crawl, frequent bilateral fingering and handling and occasional reaching above the head. (R. 19). In

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. *Id.* At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a registered nurse, day care worker and daycare owner. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 50 years old and unemployed. (R. 35). Claimant has a registered nurse degree. (R. 36). Claimant operated a child daycare from 2000 to 2008, until her children took over in 2009 due to Claimant's health problems. (R. 36-37). Prior to running her own business, Claimant worked as a nurse, until she retired in 1996 due to depression and back surgery. (R. 38)

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include chronic pain, headaches, depression, fibromyalgia and "rheumatic arthritis." (R. 41, 44, 55). Claimant testified that she has experienced chronic pain in her neck, shoulders, back and buttocks for the last two to three years. (R. 42, 46). Claimant testified that her pain radiates from her shoulders to her thighs, hip bones, coccyx bone and her legs. (R. 46, 55). Claimant also experiences pain and numbness in her arms, hands and wrists. (R. 46, 54-55). Claimant testified to experiencing headaches "twenty-four seven" every day. (R. 56-57). Claimant has physical therapy three times a week. (R. 38-39).

Claimant has sought mental health treatment from her primary care provider "fairly regularly" since the mid-2000s. (R. 39-41). Claimant testified that her psychiatrist, who Claimant began seeing

5

just one week prior to the administrative hearing, advised Claimant that she takes too many medications. (R. 40-41). Claimant testified that she experiences tearfulness and sadness on a daily basis. (R. 52). Claimant sleeps no more than three hours in a twenty-four hour period. (R. 54). Claimant takes medication for chronic pain and depression. (R. 44). Claimant testified to experiencing numerous medication side effects, including diarrhea, upset stomach, nausea, drowsiness. (R. 42, 46).

Claimant testified that a result of her chronic pain, she cannot stand for any lengthy period of time due to balance problems and can only walk 50 to 75 feet without losing her balance and is unable to sit upright more than 15 minutes. (R. 47-48, 58). Claimant testified that due to her severe pain and numbness in her hands, she drops items on a fairly regular basis and has difficulty buttoning her shirt and tying her shoes. (R. 55-56). Claimant testified further that due to her depression and pain, she does not engage in social activities. (R. 51).

In describing an average day, Claimant testified that she "basically [] lay[s] down the majority of the day because of [her] pain" and takes medication "around the clock." (R. 42-43, 58). Claimant testified initially that she performs no household activities but later stated that "[m]aybe once. . . every two or three weeks I do a little something . . . ." (R. 43-44). Claimant drives to the grocery store two to three times per week but generally sits in the car while her husband shops. (R. 36, 43, 50). Claimant testified that her appetite is poor and that her family often has to remind her to eat. (R. 52).

## III.    Vocational Expert's Testimony at the Administrative Hearing

Diane Heller testified as a VE at the administrative hearing. (R. 59-66). After the VE's testimony regarding Claimant's past work experience (R. 60), the ALJ asked the VE to assume a

6

hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked the VE whether the individual could perform Claimant's past relevant work assuming the individual had the physical capacity to perform light work, occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently balance, stoop, knee, crouch and crawl, and is limited to simple, routine, repetitive tasks with only occasional interaction with co-workers and the public. (R. 61). The VE responded in the negative, but explained the individual could perform other jobs, including motel housekeeper (DOT # 823.687-014), marker and labeler (DOT # 920.687-126) and mailroom clerk (DOT # 209.687-026). (R. 62). The ALJ then asked whether jobs would be available if the individual in the first hypothetical was further limited to only frequent handling and fingering. (R. 63). The VE responded in the affirmative, stating the individual could perform work as an office helper (DOT # 239.567-010) and sorter and pricer (DOT # 222.387-054). (R. 63). Finally, the ALJ asked if the individual in the second hypothetical could perform any work if she also had to recline at least one hour a day outside of normal breaks and lunch. (R. 64). The VE responded in the negative. *Id.*

In response to questioning by Claimant's counsel, the VE testified that if the individual in the second hypothetical were limited to only occasional fingering and handling, no jobs would be available. (R. 64-65). The VE testified further that the job examples provided in response to the second hypothetical would not be available if Claimant was limited to sedentary work. (R. 65). Counsel did not inquire as to whether other jobs would be available.

7

## DISCUSSION

I.    **The ALJ properly evaluated the opinion of Claimant's treating physician.**

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's rheumatologist, Maria Watson, M.D., of LaFayette Clinic, P.A. Rheumatology. Pl.'s Mem. at 15. This court disagrees.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment

8

relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

The medical opinion at issue appeared in an undated two-page questionnaire regarding Claimant's physical abilities and limitations due to inflammatory arthritis. (R. 717-18). Dr. Watson indicated that Claimant had a history of joint pain, swelling and tenderness, experienced morning stiffness and was unable to ambulate effectively. (R. 717). Dr. Watson noted that Claimant's most recent examination indicated inflammation or deformity in her left hand and both ankles. *Id.* Dr. Watson noted further that Claimant had been on long term steroid therapy and had moderate "[e]xtra-articular manifestations of inflammatory arthritis" in the hematologic body system. *Id.* As for physical limitations, Dr. Watson opined that Claimant could stand for 15 minutes, sit for 60 minutes, lift no more than 10 pounds on an occasional basis but not lift any weight on a frequent basis, occasionally use her hands for fine or gross manipulation and occasionally raise her arms above shoulder level. (R. 718). Claimant however could never bend or stoop. As for mental limitations, Dr. Watson opined that Claimant had moderate limitation of activities of daily living and in maintaining social functioning and had marked limitations in concentration, persistence or pace. *Id.*

9

Finally, Dr. Watson opined that Claimant is not capable of working. *Id.*

The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Watson for a rheumatologic evaluation and followup via reference to her April, June and July 2009 and February 2010 progress reports. (R. 20, 453-55, 459). However, the ALJ accorded "limited weight" to Dr. Watson's opinion, explaining that

> Dr. Watson's finding that Claimant can work '0' hours per day is not supported by the treatment records.... [T]he claimant's leu[k]openia and connective tissue disease are stable, her degenerative disc disease and fibromyalgia are no more than moderately limiting impairments, and the claimant's depression has little effect on her mental ability to perform activities necessary for substantial gainful activity.

(R. 21).

Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(d)(2). Thus, form reports are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue*, 2010 U.S. Dist. LEXIS 77379, at *16, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added). Also, while statements concerning an individual's inability to work are reserved to the Commissioner, such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5,1996 WL 374183, at *2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner").

Here, Dr. Watson did not cite to any laboratory tests or clinical findings confirming the

10

severity of Claimant's symptoms in the medical opinion at issue. In her brief, Plaintiff does not direct the court to any treatment records by Dr. Watson which support Dr. Watson's medical opinion. Rather, Plaintiff simply argues that the ALJ "is unable to point to any evidence on the record that disputes the findings of Dr. Watson." Pl.'s Mem. at 16. To the contrary, the ALJ reviewed Claimant's treatment records from Dr. Watson as well as Claimant's other treating physicians, including Cassandra Moore, M.D., Viren Desai, M.D., John Spitalieri, D.O., David Kishbaugh, D.O., and Edward Crane, Ed.D., and properly concluded that Claimant's leukopenia, connective tissue disease, degenerative disc disease, fibromyalgia and depression do not prevent Claimant from working. (R. 21).

Dr. Watson's own treatment records do not support the extreme physical limitations described in her questionnaire – including the inability to (1) ambulate effectively, (2) lift on a frequent basis, (3) stand more than 15 minutes or sit more than 60 minutes at a time, or (4) bend or stoop. (R. 718). In particular, her treatment records include the following physical examination findings: (1) no evidence of acute inflammation in the shoulders, elbows, wrists, bilateral MCP, PIP and DIP joints, bilateral knees or bilateral ankles (R. 453, 630, 633), gait and station of bilateral symmetry of length, alignment and position (R. 629), ambulates effectively (R. 715), normal range of motion of her shoulders, ankles, hips and knees (R. 629, 633, 715) and decreased range of motion in her spine secondary to pain (R. 630, 633). Physical examinations by Drs. Desai, Kishbaugh and Spitalieri reveal similar findings as those by Dr. Watson, including: (1) normal and symmetric gait (R. 672, 712); (2) normal range of motion of neck, back, and all peripheral joints (R. 712); (3) normal muscle strength in all extremities and good bulk and tone (R. 695, 712). Medical records from Claimant's treating physicians records simply lend no support to the exertional, postural and manipulative

11

limitations suggested by Dr. Watson.

Dr. Watson's treatment records also do not support her opinion that Claimant is markedly limited in concentration, persistence or pace. Dr. Watson's mental examination findings indicate only that Claimant had an appropriate mood and affect (R. 630, 633, 716) and intact insight and judgment (R. 716). Similarly, a psychological evaluation performed 26 October 2009 by David Johnson, M.A.,[2] indicates that while Claimant has "some trouble concentrating as well as tolerating stress," she is "capable of understanding instructions adequately to perform simple, routine and repetitive tasks." (R. 542). Finally, the treatment records by Dr. Watson and Claimant's other treating sources contain no medical examination warranting the legal conclusion that Claimant is disabled. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Claimant argues further in her response to Defendant's brief that reliance by the ALJ on the opinions of the Disability Determination Service ("DDS") state agency non-examining medical consultants, Frank Virgili, M.D., and Dorothy Linster, M.D., was error. Pl.'s Reply Def.'s Mem. ("Pl.'s Reply") at 2; (R. 526-33, 564-71). In particular, Claimant argues that the opinions of Drs. Virgili and Linster, dated 2 October 2009 and 14 December 2009, respectfully, are outdated and thus

---

[2] Claimant faults the ALJ for crediting Dr. Crane, as the consultative examiner. Pl.'s Mem. at 13. However, the signatures of both Mr. Johnson and Dr. Crane appear on the October 2009 evaluation. (R. 542).

do not merit determinative weight.[3] Initially, it is worth noting that the DDS consultants made their

assessments within the period of alleged disability and based their opinions upon a review of the

entire then-existing case record. *See* (R. 533) (summarizing medical findings from February 2009

through September 2009); (R. 571) (summarizing medical findings from February 2009 through

October 2009). Next, Claimant fails to explain how evidence postdating these RFC assessments,

both of which indicate Claimant is capable of performing light work,[4] demonstrates that the DDS

assessments were outdated. In particular, as summarized above, the majority of Claimant's October

2009 treatment notes indicate similar complaints and assessments as those reviewed by the DDS

consultants. Moreover, this additional evidence does not demonstrate a marked change for the worse

in the Claimant's health.

The absence of a sufficient rationale for the opinion of Dr. Watson and the inconsistency

between her opinion and other medical evidence in the record, including her own treatment records,

reasonably downgraded the true evidentiary value of her opinion. Additionally, the ALJ complied

with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand

---

[3] Claimant contends also that the DDS consultants are simply "arms of the government," implying DDS opinions are not trustworthy. Pl.'s Reply at 2. To the contrary, an ALJ is under no obligation to accept any medical opinion, including opinions of DDS consultants. *See Wireman*, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8; 20 C.F.R. § 404.1527(d)(3). Moreover, while the opinions of nonexamining DDS consultants may be received into evidence by the ALJ as expert opinion evidence and given appropriate weight about what an individual can do despite her impairments, see SSR 96-6p, 1996 SSR LEXIS 3, at *10-11, 1996 WL 374180, at *4, the evaluation of such opinions are based on the same factors as the evaluation of any medical opinion. *See* 20 C.F.R. § 404.1527(f); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (explaining opinion of non-examining physician can constitute substantial evidence to support the decision of the ALJ).

[4] While Dr. Virgili found Claimant could perform light work without any further limitations (R. 527-30), Dr. Linster found Claimant could perform light work with certain postural limitations. (R. 565-68).

13

the weight accorded Dr. Watson's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Watson's opinion.

## II.     The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 12. Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p,

14

1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints associated with her severe impairments, including chronic severe pain in her back, neck, body aches, weakness, soreness and depressive symptoms such as mood swings, insomnia, social isolation, loss of motivation and crying spells. (R. 19). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. *Id.* In reaching this conclusion, the ALJ noted the effectiveness of Claimant's medication, treatment records indicating Claimant's leukopenia and connective tissue disease were stable and that Claimant's DDD and fibromyalgia are no more than moderately limiting, Mr. Johnson's finding that Claimant might have "a tendency to exaggerate the severity of some of her symptoms," and Claimant's comments to Drs. Watson and Moore indicating Claimant remained involved in the family day care business subsequent to her alleged onset date of disability. (R. 20-21). Claimant faults the ALJ's analysis, contending he either ignored evidence or improperly considered it.

1.    June 2009 hospitalization

First, Claimant contends the ALJ ignored Claimant's June 2009 hospitalization for severe anemia. The court observes initially that Claimant's hospitalization was prompted by "persistent

nausea and vomiting for about 1 month." (R. 355). Testing during her hospitalization revealed a hemoglobin level of 5.5 and Claimant was treated with two units of "packed red blood cells." (R. 355). However, Claimant fails to explain how the ALJ's failure to discuss this evidence impacts the ALJ's consideration of Claimant's anemia. Indeed, in discussing Claimant's anemia, the ALJ specifically discussed progress records by Dr. Moore subsequent to Claimant's hospitalization which indicated Claimant was "hematologically . . . stable" and described Claimant's anemia as stable. (R. 20, 514, 660).

The ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517. Here, Claimant has failed to explain how the omission of the June 2009 hospitalization evidence within the ALJ's discussion is an omission of "obviously probative" evidence. *See White*, 2009 U.S. Dist. LEXIS 60309, at *11, 2009 WL 2135081, at *4.

16

2.    Connective Tissue Disease

Next, Claimant faults the ALJ's discussion of Claimant's connective tissue disease. In particular, Claimant contends the ALJ's discussion of this impairment "makes no sense" because the ALJ found connective tissue disease to be a severe impairment at step 2 of the sequential evaluation process but questioned its existence at step 4. Pl.'s Mem. at 12. Claimant's argument is without merit. In discussing Claimant's connective tissue disease, the ALJ noted treatment records by both Drs. Watson and Moore wherein both physicians questioned the existence of this impairment. (R. 20, 454-55, 514). However, the ALJ noted also that Claimant had undergone a rheumatologic evaluation "due to positive ANA and increased sed[imentation] rate and CRP [C-reactive protein]." (R. 20). Despite evidence questioning the existence of connective tissue disease, the ALJ found that this condition imposed more than a minimal limitation on Claimant's ability to function. However, the ALJ found also that the limitations therefrom were not as severe as Claimant alleged. Claimant has pointed to no evidence indicating how this impairment affects her ability to work but rather relies simply on the diagnosis thereof. However, the diagnosis of a condition is not enough to prove disability; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition").

3.    Degenerative Disc Disease

Third, Claimant faults the ALJ's analysis of Claimant's degenerative disc disease. In particular, Claimant contends the ALJ improperly focused on MRI scans of the lumbar spine only and "completely ignored her cervical MRI [dated 1 March 2010] which shows deformity of the spinal cord due to disc bulging in her upper spine." Pl.'s Mem. at 13. Claimant has failed to explain

17

how the omission of the March 2010 MRI within the ALJ's discussion is an omission of "obviously probative" evidence. In discussing Claimant's history of back pain, the ALJ specifically referenced a 3 March 2010 treatment record by Dr. Desai, wherein it was noted that Claimant presented with complaints of <u>cervical spine pain</u> radiating to the neck, shoulders, arms and hands. (R. 20, 670) 670). The ALJ also acknowledged Claimant's complaints of neck and body pain to Dr. Spitalieri on 7 May 2010, which includes a summary of the 1 March 2010 MRI. (R. 20, 696). Finally, the ALJ discussed a June 2010 treatment record by Dr. Kishbaugh whose physical examination findings included normal range of motion in Claimant's neck and back, functional range of motion of all peripheral joints and normal muscle strength in all extremities. (R. 20, 712).

4.    Fibromyalgia

Claimant also faults the ALJ's consideration of Claimant's fibromyalgia. In particular, Claimant contends the ALJ erroneously relied on examination findings indicating normal range of motion in Claimant's extremities and normal muscle strength in discounting Claimant's complaints regarding fibromyalgia. Claimant contends such evidence "proves nothing, however, as fibromyalgia is pain caused by overactive nerve impulses and does not cause restricted range of motion or emaciation of muscle mass, but rather persistent pain . . . ." Pl.'s Mem. at 13. "Fibromyalgia is a rheumatic disease with similar symptoms, including 'significant pain and fatigue,' tenderness, stiffness of joints, and disturbed sleep." *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 303 (4th Cir. 2004) (citing Nat'l Institutes of Health, Questions & Answers About Fibromyalgia (rev. June 2004)). Thus, as Claimant observes, objective tests are of little relevance in determining the existence or severity of fibromyalgia as fibromyalgia patients generally "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston v. Sec'y of Health &*

18

*Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Nonetheless, "while [courts] recognize that fibromyalgia is 'a disease that eludes [objective] measurement,' mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 Fed. Appx. 20, 22 (2d Cir. May 28, 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).

Here, in discussing Claimant's fibromyalgia, the ALJ noted that on a physical examination performed by Dr. Kishbaugh in June 2010, Claimant exhibited normal range of motion in her back and neck, negative straight leg sign, functional range of motion of all peripheral joints and normal muscle strength in all extremities. The court finds, however, any reliance by the ALJ on these factors is harmless as Claimant has failed to carry her burden in showing an inability to perform substantial gainful activity as a result of fibromyalgia.[5] *See* 20 C.F.R. § 1512(a) ("[The claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and its effect on [the claimant's] ability to work on a sustained basis."). Claimant argues only that she experiences pain – a subjective allegation found credible by the ALJ as evidenced by the fact he found Claimant's fibromyalgia to be a severe impairment imposing moderate limitations in Claimant's functional abilities. (R. 21). Claimant does not discuss, however, how such pain causes a functional loss greater than that found by the ALJ.

The only evidence documenting limitations caused by Claimant's impairments is the form

_____

[5] Defendant asserts, as support for the ALJ's finding, that the record revealed normal physical examination findings and argues, without citation to authority, that "evidence of reduced range of motion in the joints due to stiffness or pain is relevant to an inquiry of the severity" of Claimant's fibromyalgia. Def.'s Mem. at 23. As the Sixth Circuit explained, however, normal clinical findings are not uncommon in fibromyalgia patients – nor are they inconsistent with a diagnosis of fibromyalgia. *See Preston*, 854 F.2d at 819-20 (explaining normal clinical and test results are not "highly relevant" in assessing the severity of fibromyalgia).

opinion by Dr. Watson (the physician who treated Claimant for fibromyalgia) wherein she states that Claimant's symptoms of joint pain and inflammation prevent Claimant from working. However, as previously discussed, Dr. Watson's treatment records do not support the form opinion. The diagnosis alone does not substantiate Dr. Watson's conclusion concerning the extent of Claimant's joint pain – that it is fully incapacitating. Nothing in Dr. Watson's medical notes suggests that Claimant's fibromyalgia is as limiting as recommended in her form opinion. In fact, Dr. Watson's progress notes are devoid of any discussion with respect to Plaintiff's functional limitations and do not provide a basis for the extensive limitations in the form opinion. *Cf. Grimsley v. Astrue*, No. 1:07-CV-763, 2009 U.S. Dist. LEXIS 22756, at *16-18, 2009 WL 737109, at *6-7 (M.D.N.C. Mar. 20, 2009) (noting treatment records by claimant's treating physician over a two year time period characterized claimant's fibromyalgia as disabling and documented numerous complaints by claimant of "periods of profound insomnia," worsening pain and daytime fatigue); *Green-Younger*, 335 F.3d at 104 (noting treating physician diagnosed claimant's fibromyalgia as severe and the cause of marked limitations in the claimant's activities of daily living).

5.    Depression

Next, Claimant faults the ALJ's consideration of her depressive symptoms. In discounting the extent of Claimant's alleged limitations, the ALJ relied on an October 2009 psychological examination. (R. 21). First, Claimant faults the ALJ for attributing the examination findings to Dr. Crane versus Mr. Johnson. Pl.'s Mem. at 13. As explained earlier, the report was signed by both individuals. (R. 542). Next, Claimant contends the ALJ improperly concluded that no substantial evidence exists in the record contradicting the examiners' finding that Claimant may have "a tendency to exaggerate the severity of some symptoms." Pl.'s Mem. at 13; (R. 540). In particular,

20

Claimant cites a psychological evaluation by Dr. Crane dated 4 August 2010, wherein Dr. Crane stated that Claimant struck him as "a significantly depressed individual" (R. 720), as evidence contradicting the observation that Claimant has a tendency to exaggerate her symptoms. Pl.'s Mem. at 13. It is unclear how the August 2010 evaluation contradicts the October 2009 evaluation as the latter also describes Claimant as "rather depressed" and in fact recommends outpatient mental health services. (R. 540). As the ALJ noted, however, Claimant's Global Assessment of Functioning ("GAF") scores, which ranged from 55-65,[6] indicates Claimant's depression is not so severe as to be disabling. In fact, Mr. Johnson and Dr. Crane concluded in the October 2009 evaluation that Claimant was capable of understanding instructions adequately to perform simple, routine and repetitive tasks. (R. 542).

6.    Claimant's daycare involvement

Finally, Claimant contends the ALJ improperly relied on Claimant's statements to Drs. Watson and Moore concerning her involvement in her family's daycare business. Pl.'s Mem. at 14. In assessing Claimant's credibility, the ALJ noted that while Claimant testified to having no involvement in her family's daycare business since December 2008, statements to Drs. Watson and Moore in April 2009 and July 2009, respectively, contradict that testimony. (R. 21); *see* (R. 459) (noting Claimant "has some childcare that she had been running but she is going to shut that down in the near future"); (R. 365) (noting Claimant "has been running a daycare out of her home").

---

[6] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994). A GAF score between 51 and 60 indicates "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." *Id.* A GAF score between 61 and 70 indicates "[s]ome mild symptoms [or] some difficulty in social, occupational, or school functioning [] but generally functioning pretty well . . . ."

Claimant contends, however, that the ALJ's reliance on this discrepancy is "ridiculous" because the record demonstrates Claimant's involvement subsequent to December 2008 consisted only of picking up an assistant and one child in her van in the morning and giving them a ride to the daycare center after which she returned home to rest. Pl.'s Mem. at 14; (R. 174). Claimant concludes that the ALJ's rationale was "an effort to distort the facts and make it appear that [Claimant] was working in a significant capacity after her alleged onset date . . . ." Pl.'s Mem. at 14.

Claimant essentially contends that the ALJ improperly weighed the evidence before him. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). The ALJ correctly observed that while Claimant stated she had no involvement with the daycare center, as of June 2009, Claimant had indicated to a treating source that she was running a daycare out of her home. Such evidence contradicts Claimant's argument that she rested at home all day.

The ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

**III.    The ALJ's RFC is supported by substantial evidence.**

Claimant contends the ALJ's improper evaluation of Claimant's credibility "results in an RFC finding which is not supported by substantial evidence." Pl.'s Mem. at 12. Claimant argues further that the ALJ failed to evaluate the cumulative effect of her impairments on her ability to work. *Id.*

22

at 15.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *6, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7.

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's opinion that the combination of her impairments causes her chronic pain as well as Claimant's

23

complaints of back and neck pain, body aching, weakness and soreness, headaches and numerous depressive symptoms. (R. 19).

The ALJ's decision indicates that he considered Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform light work. As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Also, the ALJ's review of Claimant's medical impairments includes consideration of Dr. Watson's undated form opinion. While Claimant contends the RFC finding is not supported by substantial evidence based on an erroneous evaluation of the treating physician's opinion and Claimant's credibility and improper reliance on the opinions of the DDS medical consultants, as detailed above, the court finds the ALJ's consideration of the medical opinions and Claimant's credibility was proper.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-42] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-44] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 30th day of November, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge